**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0652, <u>State of New Hampshire v. Nathan Chernis</u>, the court on November 2, 2018, issued the following order:**

Having considered the briefs, the oral arguments of the parties, and the record submitted on appeal, we conclude that a formal written opinion is unnecessary in this case. The defendant, Nathan Chernis, seeks interlocutory review of the Circuit Court's (<u>Spath</u>, J.) order denying his Motion to Dismiss. <u>See</u> <u>Sup. Ct. R.</u> 8. The transferred question for our review is whether double jeopardy bars the continued prosecution of the defendant for an open container violation and driving under the influence ("DUI"). We conclude that it does not, and we therefore affirm the trial court's ruling and remand the case for trial.

The record supports the following facts. On February 3, 2016, the defendant was arrested for an open container violation and DUI. During an October 2016 hearing, the defendant, who was self-represented at the time, pleaded guilty to the DUI pursuant to an agreement with the State. After the Trial Court (<u>Gordon</u>, J.) approved the agreement and accepted the defendant's plea, the State informed both the defendant and the trial judge that this guilty plea would classify the defendant as a habitual offender. The following discussion ensued between the trial court and the defendant:

> The Court: Were you aware that this would certify you as a habitual offender?
>
> Mr. Chernis: No, sir; I was not.
>
> The Court: Okay. Do you still want to go forward with your plea?
>
> Mr. Chernis: I will — honestly like to consult somebody who knows something about that if that's going to be the case.
>
> The Court: I think that's an excellent idea. Now, you are here for a plea today. You've already been arraigned on the complaint. If I were to schedule you out for a case status hearing in 30 days, do you want to do that?
>
> Mr. Chernis: And I would just need to talk to an attorney before then or — I already was talking to an attorney that I was considering putting on retainer so, yeah, 30 days should be fine to have that all taken care of.

The Court: Now, I'm just going to put it in for a case status hearing, and I'm going to destroy the acknowledgement and the sentencing order which I just completed, okay?

Mr. Chernis: Sorry, Your Honor.

The Court: I'm going to destroy those —

Mr. Chernis: Oh, no. I said I'm sorry; I understand what you're saying.

The defendant's plea was subsequently vacated by the trial court. Thereafter, the defendant retained counsel and filed a motion to dismiss on double jeopardy grounds. The Trial Court (Spath, J.) denied the defendant's motion following a hearing. This interlocutory appeal followed.

The defendant argues that the trial court withdrew his plea and vacated the conviction without his prompting or approval. He posits that the conviction was not properly vacated because he did not acquiesce to such a result, but, given that the trial court destroyed the record of conviction and sentence, the Double Jeopardy Clauses of the State and Federal Constitutions prohibit a trial on the charge. In ruling on the defendant's motion to dismiss, the trial court found that the defendant "accepted the opportunity to withdraw his plea in order to consult an attorney." Thus, we must determine whether the trial court properly found that the defendant withdrew his guilty plea. In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. Barnet v. Warden, N.H. State Prison for Women, 159 N.H. 465, 468 (2009).

On review of the record, we conclude that the trial court did not err in finding that the defendant withdrew his guilty plea. Following the initial plea colloquy, the State informed the defendant and the trial court that as a result of the guilty plea the defendant became eligible for habitual offender certification — an action the State was not required to take. Cf. State v. Elliott, 133 N.H. 190, 192 (1990) ("[W]e have consistently held that a sentencing court need not advise a defendant about the habitual offender law before accepting a guilty plea to a predicate offense under that law." (citations omitted)). The trial court then asked the defendant whether he wanted to move forward with his plea knowing this consequence. In response, the defendant requested the opportunity to speak with an attorney and agreed to a case status hearing thirty days later. Moreover, when the trial court explained that it would "destroy the acknowledgement and the sentencing order which [it] just completed," the defendant responded that he understood. In ruling on the motion to dismiss, the trial court found that this exchange amounted to the trial judge offering the defendant the option to withdraw his plea in order to speak with counsel, which the defendant accepted. This finding is supported by the record. See Barnet, 159 N.H. at 468.

2

The defendant argues that his actions should not be construed as a withdrawal of his plea because he did not explicitly move to vacate his conviction. He suggests that instead of vacating his conviction, the trial court should have maintained the "status quo" and done nothing with his conviction, while affording him an opportunity to speak with an attorney. Even if we were to assume that this was an option available to the trial court, the defendant provides no authority for his claim that the constitution requires such an option.[1] Furthermore, the trial court found — and the record supports — that the defendant accepted the offer to withdraw the plea in order to consult with an attorney. To the extent that the defendant argues that, because he did not explicitly move to withdraw his plea, he did not want it revoked, that assertion is not supported by the record. Moreover, the fact that the defendant seeks to nullify his original conviction and avoid exposure to any punishment at all indicates that he does not want to be subject to the conviction to which he originally pleaded guilty. The only legally binding way for the defendant to dispose of that conviction was to, as the trial court determined, withdraw his guilty plea. See United States v. Franco, No. 00 CR. 300 (LMM), 2003 WL 21305352, at *6 (S.D.N.Y. June 6, 2003) ("Where a defendant withdraws a guilty plea, that does not entitle him to dismissal, but a trial.").

Because we conclude that the trial court did not err in finding that the defendant withdrew his plea, the double jeopardy provisions of the State and Federal Constitutions do not bar his further prosecution on the original charges. See United States v. Kim, 884 F.2d 189, 191-92 (5th Cir. 1989) ("When defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain." (quotation and brackets omitted)); see also Serfass v. United States, 420 U.S. 377, 393 (1975) (noting "the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy").

Affirmed and remanded.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,
Clerk**

---

[1] In this case the defendant — who is charged with a class B misdemeanor and a violation level offense — is not constitutionally entitled to counsel. State v. Westover, 140 N.H. 375, 377 (1995) (holding that where there is no possibility of imprisonment "the defendant does not have a right to appointed counsel"). The trial court, therefore, by allowing the defendant to withdraw his plea and obtain counsel to assist him, provided the defendant with greater protection than the law requires.

3